IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA P. COUCKE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-766 |
| | § | |
| HARRIS COUNTY, TEXAS *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are two Rule 12(b)(6) motions to dismiss. Dkts. 6, 7. Deputy Juan Lerma moved separately from Deputy Patrick Mirrielees and Harris County, Texas a/k/a Harris County Sheriff's Department (collectively, "Defendants"). Plaintiff Joshua P. Coucke responded. Dkts. 10, 11. Defendants replied. Dkts. 13, 14. Additionally, Coucke moved for limited discovery. Dkt. 12. Defendants responded. Dkt. 15. Having considered the motions, responses, replies, and applicable law, the court is of the opinion that: (1) the first 12(b)(6) motion should be DENIED (Dkt. 6); (2) the second 12(b)(6) motion should be DENIED, in part, and GRANTED, in part (Dkt. 7); (3) the third motion should be GRANTED (Dkt. 12); and (4) Coucke should be GRANTED leave to amend his claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018 (1978)).[1]

---

[1] The court GRANTS Coucke's limited discovery motion only to give him access to: (1) material responsive to Open Records Requests that he submitted before filing this lawsuit; and (2) the deputies' personnel files (but not any medical or wage information). In practical terms, it is nearly impossible for Coucke to try to state a *Monell* claim without access to that limited discovery. To balance that need against the Defendants' (anticipated) privacy concerns, the court ORDERS the parties to propose an agreed protective order within five days of this order. Within seven days of the protective order's entry, Defendants must produce the requested information to avoid more delays in this case.

## I. BACKGROUND

After a Harris County Sheriff's Deputy shot him five times, Coucke filed this excessive force case against the county and two deputies.[1]  Dkt. 2-4 at 5.

On January 31, 2018, Lerma and Mirrielees knocked at Coucke's door to try to find his roommate, Matthew Cobb. *Id.* at 3. The deputies wanted to arrest Cobb—someone who they considered to be armed and dangerous—because he had threatened someone with a gun. *Id.* The deputies did not tell Coucke or his girlfriend about any potential danger. *Id.*

The deputies asked Coucke to lead them to Cobb's room. *Id.* Coucke showed the deputies to the stairs and told them how to find it. *Id.* at 3–4. When the deputies did not understand his directions, Coucke took them to the room. *Id.* at 4.

At their request, Coucke opened the door to find Cobb asleep. *Id.* While the deputies waited in the hall, Coucke woke him. *Id.* Coucke told his roommate that the deputies wanted to talk. *Id.* Then, Coucke switched places with the deputies. *Id.*

After a brief conversation, the deputies arrested and handcuffed Cobb. *Id.* While in handcuffs and undergarments, Cobb asked the deputies for clothes. *Id.* A deputy handed Cobb a pair of shorts that contained a gun. *Id.* The other deputy asked Cobb to locate the gun. *Id.* Then, "a scuffle ensued." *Id.*

Soon after, Coucke saw both deputies run to the stairs. *Id.* at 5. Fearing for his own safety, Coucke followed behind them. *Id.* When he reached the top of the stairs, the deputies had already reached the bottom. *Id.* As Coucke started down the stairs, Lerma turned around to face him. *Id.*

---

[1] At the 12(b)(6) stage, the court accepts Coucke's factual allegations as true. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).

Mirrielees saw that Lerma drew his gun. *Id.* And, Mirrielees saw Lerma fire multiple rounds. *Id.* Mirrielees did not try to stop his colleague. *Id.*

Lerma hit Coucke five times. *Id.* When he reached the bottom of the stairs, Coucke realized he had been shot, collapsed, cried out for help, and crawled outside. *Id.* The shots wounded Coucke's arm and hand. *Id.*

Before this shooting, the county had already received multiple misconduct complaints—including alleged excessive force violations—about both deputies. *Id.* at 6. In one, a year before he shot Coucke, Lerma fired a taser at a man with disabilities after the man tried to cooperate in his own arrest (by putting his hands behind his head). *Id.*

After the shooting, Coucke filed an Internal Affairs complaint against both deputies. *Id.* "[T]he allegations were sustained against Lerma, and not sustained against Mirrielees." *Id.* The district attorney charged Lerma in front of a grand jury but the grand jury "no billed" him. *Id.*

Before Coucke filed this lawsuit, he made open records requests for "any complaints, Internal Affairs investigations, lawsuits, disciplinary actions, or similar documents regarding alleged or actual misconduct of Lerma and Mirrielees." *Id.* Because the responsive documents were "voluminous," Harris County only produced a "representative sample" of those documents. *Id.* at 7.

Coucke invokes 42 U.S.C. § 1983 to sue Defendants for violating his Fourth Amendment rights to be free from unreasonable seizure and excessive force. *Id.* He asks for damages and attorneys' fees.[2] *Id.* Among his *Monell* claims, he seeks to hold the county liable for: (1) ratifying

---

[2] Coucke also alleges that Lerma violated his Fourteenth Amendment right to be free from excessive force. Dkt. 2-4 at 8. To the extent that Lerma challenges that claim for the first time in his reply, the court declines to analyze it here. *See Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958,

the deputies' illegal acts or failing to correct them; (2) inadequate screening; (3) using bystanders to help carry out arrests; (4) inadequate supervision; and (5) inadequate training (e.g., how to properly clear a scene of bystanders or use deadly force). *Id.* at 10. In an alternate claim, he sues the county for negligence under the Texas Tort Claims Act ("TTCA"). *Id.* at 11.

Although Coucke sues both deputies in their individual capacities, only Lerma moves to dismiss on qualified immunity grounds. Dkt. 6 at 3. Harris County argues that Coucke advances an inadequately-pleaded *Monell* claim. Dkt. 7 at 9. It also argues that sovereign immunity bars the TTCA claim. *Id.* at 10.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). At the pleading stage, the court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

---

978 n.3 (S.D. Tex. 2012) (Ellison, J.) (declining to analyze argument that movant waived by raising it for the first time in reply to its motion to dismiss).

When a "qualified immunity defense is asserted in . . . [a] motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint[.]."[3] *Anderson v. Valdez*, 845 F.3d 580, 589–590 (5th Cir. 2016); *see also Dyer v. Houston*, -- F.3d --, No. 19-10280, 2020 WL 3636334, at *3 (5th Cir. July 6, 2020) (accord).

### III. ANALYSIS[4]

#### A. Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (internal quotation marks and citation omitted)).

---

[3] Because Rule 12(b)(6) governs, the court will not address the evidentiary challenges raised in Defendants' motions. *E.g.,* Dkt. 6 at 7; Dkt. 7 at 8; Dkt. 13 at 2.

[4] At the outset, the court rejects three meritless grounds for dismissal. First, the court will not bar a § 1983 claim against Mirrielees in his individual capacity on the incorrect theory that Coucke only alleges a claim against the deputy in his official capacity. *Compare* Dkt. 7 at 10, *with* Dkt. 11 at 3 (explaining that Coucke served Mirrielees and the county on separate occasions), *and* Dkt. 2-4 at 5 (specifically alleging that Lerma "had an opportunity to stop Lerma from shooting" but instead, "acted with conscious indifference to [Coucke's] rights and allowed [Lerma] to fire multiple rounds at [Coucke]."), *and Peña v. City of Rio Grande*, 879 F.3d 613, 620–21 (5th Cir. 2018) (explaining that an officer can face "bystander liability" when that "officer . . . is at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force."). Second, the court will not dismiss a nonexistent claim for exemplary damages against the county. *Compare* Dkt. 7 at 12, *with* Dkt. 2-4 at 13, *and* Dkt. 11 at 4. And, third, the court rejects the incorrect argument that Tex. Civ. Prac. & Rem. Code § 101.106(e) "prevents [Coucke] from filing suit against both Harris County and individual defendants." *Compare* Dkt. 7 at 10, *with Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 415 (Tex. 2015) (holding that § 101.106(e) did not mandate dismissal of § 1983 claims against individual employees because those claims were not brought under the TTCA).

**B. Claims Against Lerma**

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Because Lerma raises that defense, Coucke must plead enough facts to show its inapplicability. *See id.* The court will decide if: (1) Coucke alleges that Lerma violated a constitutional right; and (2) that right was clearly established when the deputy shot Coucke. *See Converse v. City of Kemah*, 961 F.3d 771, 774–75 (5th Cir. 2020).

Before analyzing qualified immunity, the court must determine whether Coucke "has file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Peña*, 879 F.3d at 620 (citing *Anderson*, 845 F.3d at 589–90)). "To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that []he was seized. Next []he must show that []he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (internal citations omitted).[5]

---

[5] According to Lerma, the § 1983 claim fails because it does not allege willful conduct. Dkt. 6 at 7. While a § 1983 claim requires evidence that "a defendant acted willfully when violating someone's federal rights," Coucke alleges enough willful conduct to survive Rule 12(b)(6). *See Bryant v. Gillem*,---F.3d ---, No. 19-11284, 2020 WL 3867371, at *4 (5th Cir. July 9, 2020). According to Lerma, Coucke "essentially concedes" or "appears to concede" that Lerma acted unintentionally (i.e., not willfully) when the latter shot the former five times. *See* Dkt. 6 at 7; *see also* Dkt. 13 at 2. That is wrong. *E.g.*, "[C]oncede, v." OED Online, Oxford University Press, June 2020, www.oed.com/view/Entry/38071 (Aug. 5, 2020) ("Concede" means "to acknowledge the truth" or "to admit that something is the case."). He cites Coucke's response to Harris County's challenge to the TTCA claim. Dkt. 13 at 2 (citing Dkt. 11 at 7). Coucke states that he "clearly alleged the shooting was negligent." Dkt. 11 at 7 (citing Dkt. 2-4 at 11). In turn, Coucke cites to his original pleading that seeks "claims for the [TTCA] for Defendants [sic] Harris County[.]" Dkt. 2-4 at 11, ¶ 45. Coucke's response to Harris County only relates to the county, not Lerma.

6

1. **Constitutional Violations**

Coucke alleges that when Lerma shot him, the deputy violated his Fourth Amendment rights to be free from unreasonable seizures and the use of excessive force.[6] Coucke alleges that his hand and arm injuries resulted directly and only from Lerma's shots. Dkt. 2-4 at 5. *Alexander v. City of Round Rock*, 854 F.3d 298, 310 (5th Cir. 2017) ("as long as a plaintiff has suffered some injury, even relatively insignificant injuries . . . will prove cognizable[.]")). Coucke's allegations allow the court to draw the reasonable inference that Lerma "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662

"An officer seizes a person when he, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* (internal citation and quotation marks omitted). And, "the 'governmental termination of freedom of movement' must be made 'through means intentionally applied.'" *Id.* A gunshot can seize a person as a means of physical force. *See id.* And, it can terminate the freedom of movement by the means intentionally applied (e.g., the shot). *See id.* (seizure occurred when officer shot at driver's car).

The parties disagree about whether Lerma seized Coucke by shooting him. Dkt. 6 at 9. Lerma argues that *Corbitt v. Vickers* bars an "innocent bystander" from claiming that a seizure occurred. *Id.* (citing 929 F.3d 1305 (11th Cir. 2019), cert. denied, No. 19-679, 2020 WL 3146693 (June 15, 2020)). The court disagrees.[7] At this stage, Coucke alleges enough facts to meet the

---

[6] Because the court determines that Coucke alleges a constitutional violation, it need not reach Coucke's alternative seizure argument. *See* Dkt. 10 at 7 (arguing that a seizure occurred when he "submitted to the deputies' assertion of authority when he complied with their requests for assistance with Cobb.").

[7] *Corbitt* does not bind this court. Even so, it is distinguishable for several reasons, including because everyone agreed that an officer mistakenly shot a child instead of a dog. 929 F.3d at 1307, 1315 (reversing denial of qualified immunity). The *Corbitt* plaintiff alleged "that the action of [the officer] firing at the dog and *accidentally* hitting [the child] violated the Fourth Amendment."

7

seizure requirement. *See Blakely v. Andrade*, 360 F. Supp. 3d 453, 479 (N.D. Tex. 2019) (explaining qualified immunity burden within Rule 12(b)(6) context).

### 2. Objective Reasonableness

Next, the court analyzes whether Lerma's use of force was objectively reasonable. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865 (1989); *see also Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) ("guns represent the paradigmatic example of 'deadly force[.]'"). Deadly force violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (internal quotation marks omitted). The court uses "the perspective of a reasonable officer on the scene, paying careful attention to the facts and circumstances of each particular case." *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018) (internal quotation marks omitted). And, it "considers only the facts that were knowable to the defendant officers" at the scene. *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam).

Lerma states that he "accidently shot" Coucke "while the deputies were running from Cobb, who was armed at the time." Dkt. 13 at 4. He does not try to argue that Coucke posed a threat of serious physical harm to Lerma or anyone else.

Despite Lerma's characterization of the shots, the court must take Coucke's allegations as true. *See O'Daniel*, 922 F.3d at 304. According to Coucke, when Lerma aimed his gun and fired,

---

*Id*. at 1315 (emphasis added). By "intentionally firing at the dog and *unintentionally shooting* [the child]," the officer "did not violate any clearly established Fourth Amendment rights." *Id*. (emphasis added). Here, the parties disagree over whether Lerma mistakenly shot Coucke. *See* Dkt. 6 at 9. In any event, the parties can resolve that fact dispute later. *E.g., Cole v. Carson*, 935 F.3d 444, 453, 457 (5th Cir. 2019), as revised (Aug. 21, 2019) (no error in denying summary judgment on qualified immunity when fact issues existed on what officers knew before shooting the plaintiff, whether they warned him before doing so, and what he did before the shooting).

Lerma: (1) knew that Cobb had been handcuffed; (2) saw Coucke; (3) knew Coucke was not armed; (4) knew that Coucke had cooperated with the deputies to arrest Cobb; and (5) did not give Coucke any orders or warnings. Dkt. 10 a 6; Dkt. 13 at 4. Coucke pleads enough facts to show that, if true, Lerma's use of deadly force was objectively unreasonable.

### 3. Objective Unreasonableness in Light of Clearly Established Law

"For a right to be clearly established under the second step of the qualified immunity analysis, '[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Flores*, 381 F.3d at 400 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)). Clearly established means that "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id*. The Fifth Circuit does "not require plaintiffs to identify a case directly on point, but the case law must place the . . . constitutional question beyond debate." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (internal quotation marks and citation omitted).

Recently, the Fifth Circuit held that it was clearly established that an officer could not use a taser against a fleeing and unarmed non-suspect. *Peña*, 879 F.3d at 616. That case presents the closest analogue to this one. *See id.* In *Peña*, police intervened in a disagreement between a daughter and a father. *Id*. After an officer tried to remove the daughter from the back seat, she fled, and another officer pursued her on foot. *Id.* That officer fired a taser at the daughter. *Id.* The daughter's excessive force allegations against the tasing-officer survived Rule 12(b)(6) "because she was a non-threatening non-suspect." *Id.* at 622. The court contrasted a fleeing non-suspect with a fleeing felon, and noted that the latter "present[ed] another matter entirely." *Id.*

9

Nineteen days after the Fifth Circuit decided *Peña*, Lerma shot Coucke. By then, it was clearly established, as a matter of law, that an officer could not use a taser against a fleeing, non-threatening non-suspect. *Id.* at 619. The court determines that it would be just as impermissible (if not more) to use a deadly weapon against a fleeing, non-threatening person who was not a suspect.

Everyone agrees that Coucke: (1) was not a suspect; (2) did not commit a crime; (3) did not pose a safety threat; or (4) did not resist arrest or fail to comply with a command. The court finds that a reasonable officer on the scene would not believe it was lawful to, without any warning, fire multiple rounds at an at unarmed, non-threatening non-suspect who was fleeing danger, and had cooperated with officers just moments before. As a result, Lerma's conduct was objectively unreasonable under clearly established law at the time of the incident. Coucke meets the second prong.

Because Coucke alleges enough facts to meet both prongs of the qualified immunity test, he negates Lerma's entitlement to qualified immunity. The court DENIES the motion WITHOUT PREJUDICE. Lerma can try to reurge qualified immunity again in a motion for summary judgment after discovery is complete.

## C. Claims against Harris County

### 1. *Monell* liability

Coucke brings a *Monell* claim against Harris County. Dkt. 2-4 at 7. Harris County challenges each element of that claim. Dkt. 7 at 6. To state a § 1983 claim against a municipality, a plaintiff must allege: (1) a policymaker; (2) an official policy; and (3) a violation of a

10

constitutional right whose 'moving force' is the policy or custom.[8] *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (discussing *Monell*, 436 U.S. at 694).

In the Fifth Circuit, a plaintiff can establish a municipal policy by alleging: (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) even a single decision in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019).

After reviewing the briefing, applicable law, and Coucke's allegations, the court concludes that without limited discovery, it is nearly impossible for Coucke to allege the municipal policy element with enough facts to survive Rule 12(b)(6). Of his *Monell* theories, Coucke comes closest to plausibly alleging that Harris County engaged in inadequate screening. Dkt. 11 at 5. In particular, he alleges that a year before the shooting, the county knew that someone complained that Lerma used excessive force against a person with disabilities who was trying to cooperate in his own arrest. *Id.* Additionally, Coucke alleges that the county had voluminous records about both deputies. *Id.* at 6.

He does not, however, allege close to enough facts to show that the county has a policy, custom, or practice of using bystanders to help carry out arrests or inadequate supervision, or inadequate training (how to properly clear a scene of bystanders or use deadly force). *Cf. id.* at 5.

---

[8] The county incorrectly asserts that Coucke must name a particular policymaker. To meet the "policymaker" element—"a legal question that need not be [pleaded]"— Coucke does not need to identify a specific policymaker to survive Rule 12(b)(6). *See Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016). Instead, Coucke only needs to "allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable. *Id.*

11

Accordingly, the court GRANTS the county's request to dismiss the *Monell* claim, but also GRANTS leave to amend that claim and limited discovery.

### 2. TTCA

Coucke alleges that the county is liable to him under the TTCA. In Texas, "a governmental unit may be sued if the Legislature has waived its immunity with clear and unambiguous language." *Harris Cty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018). Under the TTCA, "a governmental unit can be liable for certain injuries proximately caused by the negligence or a wrongful act or omission of an officer or employee acting within the scope of his employment." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019).

"[That] waiver encompasses claims for 'personal injury . . . so caused by a . . . use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)). The Supreme Court of Texas has "held that a governmental unit 'uses' tangible personal property if it puts or brings the property into action or service, or employs the property for, or applies it to a given purpose." *Id.* (collecting cases). And, "the government's use of the property must have actually caused the injury." *Id.* (internal quotation marks and citations omitted).

It is undisputed that Lerma was acting within the scope of his employment when he shot Coucke. Coucke alleges that the county is liable for damages resulting "from the multiple gunshot wounds he received." Dkt. 2-4 at 11. Lerma's gun counts as tangible property. *E.g., Smith v. Tarrant Cty.*, 946 S.W.2d 496, 501 (Tex. App.—Fort Worth 1997, writ denied). Coucke alleges

12

that the Defendants proximately caused his injuries. Dkt. 2-4 at 12. And, he seeks damages. *See id.*

The county asserts that it is entitled to sovereign immunity by challenging the TTCA causation element. *See* Dkt. 7 at 10; Dkt. 14 at 3. Specifically, it argues that Coucke "claims his injuries resulted from direct, physical contact with a person[,]" rather than through tangible personal property. *Id.* That is wrong. *See* Dkt. 2-4 at 11 (alleging damages resulting "from the multiple gunshot wounds he received."). In any event, Coucke's TTCA claim survives Rule 12(b)(6). The court DENIES the county's motion to dismiss this claim.

## V. Conclusion

For these reasons, the court DENIES without PREJUDICE Lerma's motion to dismiss on qualified immunity grounds. It also DENIES the county's motion to dismiss the TTCA claim and GRANTS its motion to dismiss the *Monell* claim. In turn, the court GRANTS Coucke limited discovery and an opportunity to amend his *Monell* claim.

Signed at Houston, Texas on August 7, 2020.

_____
Gray H. Miller
Senior United States District Judge