UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA P. COUCKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 4:20-cv-00766 |
| | § | Jury |
| HARRIS  COUNTY, TEXAS a/k/a HARRIS | § | |
| COUNTY SHERIFF'S DEPARTMENT; | § | |
| JUAN LERMA; and PATRICK MIRRIELEES, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Joshua P. Coucke, hereinafter called "Plaintiff," and makes and files this Third Amended Complaint against HARRIS COUNTY, TEXAS a/k/a HARRIS COUNTY SHERIFF'S DEPARTMENT, JUAN LERMA and PATRICK MIRRIELEES, hereinafter called Defendants, and for causes of action would show unto the Court the following:

## I.
## PARTIES

1.     Plaintiff JOSHUA P. COUCKE is an individual who resided in Harris County, Texas at the time of the incident made the basis of this lawsuit.  He currently resides in the state of Washington.

2.     Defendant HARRIS COUNTY, TEXAS a/k/a HARRIS COUNTY SHERIFF'S DEPARTMENT is a municipal governmental entity located in Harris

County, Texas, and may be served by serving its County Judge, Lina Hidalgo, Harris County Judge, at 1001 Preston, Suite 911, Houston, Texas 77002.

3.     Defendant, Juan Lerma, is a Deputy Sheriff in the Harris County Sheriffs Department.  He may be served at his place of employment, Harris County Sheriff's Department, 6831 Cypresswood Drive, Spring, Texas 77379, or wherever else he may be found.

4.     Defendant, Patrick Mirrielees, is a Deputy Sheriff in the Harris County Sheriff's Department.  He may be served at his place of employment, Harris County Sheriff's Department, 6831 Cypresswood Drive, Spring, Texas 77379, or wherever else he may be found.

## II.
## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs are asserting a cause of action that arises under a federal statute.

6.     Venue is proper in the United States District Court for the Southern District of Texas, Galveston Division pursuant to 28 U.S.C. § 1391(b) (1) because the Defendant's principle offices are located in the Southern District of Texas, Galveston Division.  Venue is also proper in this district and division pursuant to 28 U.S.C. § 1391(b) (2) because a substantial part of the acts or omissions giving rise to the claim occurred within the district.

## III.
## CONDITIONS PRECEDENT

7.     All conditions necessary for the maintenance of this action have been performed or have occurred.

## IV.
## FACTUAL BACKGROUND

8.     On January 31, 2018, Harris County Sheriff Deputies Juan Lerma ("Lerma") and Patrick Mirrielees ("Mirrielees") appeared at the home of the Plaintiff, located at 2527 Kiplands Way Drive in Houston, Texas.  Plaintiff is a veteran of the United States Armed Forces, specifically the Navy.  Also, Plaintiff is not a violent criminal, and does not have a history of violent crime.  Lerma and Mirrielees knew that Plaintiff was not a threat.

9.     At around 9:30 p.m., Deputies Lerma and Mirrielees came to Plaintiff's door and talked with him.  Plaintiff was home with his girlfriend and pets.

10.     Lerma and Mirrielees advised the Plaintiff that they were looking for his roommate, Matthew Cobb ("Cobb").  A warrant for Cobb's arrest had recently been issued because he threatened his girlfriend's mother with a gun.  Cobb was considered "armed and dangerous."  Because of the danger Cobb posed, Deputies Coronado and Parsons (the third and fourth deputies) were stationed at the back of the house.  Lerma and Mirrielees knew these facts were true, but did not inform Plaintiff of the danger and failed to take any precautionary measures to protect Plaintiff or anyone else in the home.

11.     At the deputies' request, Plaintiff let them into his home.

12.     At the deputies' request, Plaintiff took them to the bottom the stairs and gave them directions to Cobb's room.  The directions were so simple, and the home's layout was

3

so simple, that only plainly incompetent deputies would be unable to find Matthew Cobb's room.

13.     Lerma and Mirrielees were unable to find Cobb's room.

14.     Because they were unable to find Cobb's room, Plaintiff helped them to find the room.

15.     The deputies asked Plaintiff to open the door.  Plaintiff complied, and found Cobb asleep in bed.

16.     Plaintiff woke Cobb up and told him the deputies wanted to talk.

17.     Plaintiff left the room and went into the hallway.  The deputies entered the room and talked to Cobb.

18.     Cobb asked why he was being arrested.  One deputy then asked Cobb to identify himself.

19.     The other deputy stated that Cobb should be arrested.

20.     Cobb accepted the arrest and asked for clothes because he was in his underwear.  At this point, Cobb was handcuffed and was not a threat to anyone.

21.     One of the deputies gave Cobb shorts.  A gun was in the shorts.  The gun was readily apparently to all but a plainly incompetent deputy.  Only a plainly incompetent deputy would have given Cobb, or anyone considered "armed & dangerous," shorts with a gun in them.

22.     The other deputy asked Cobb the location of the gun.  At that point, a scuffle ensued.

23.     The deputies ran out of the room and down the hallway past Plaintiff.  Seeing the deputies run, Plaintiff ran behind the deputies because he was afraid for his safety.

24.     When Plaintiff reached the top of the stairs, the deputies were are the bottom of the stairs.

25.     Plaintiff began to proceed down the stairs.

26.     Deputies Lerma and Mirrielees knew that Plaintiff was an innocent bystander who did not pose a threat to anyone.  They knew that Plaintiff was following behind them. Also, they knew that Cobb did not pose a threat to them and was not able to harm them because he was restrained.

27.     Despite Lerma's clear knowledge that Cobb was not a threat, and of the almost certain risk of shooting an innocent bystander, Lerma turned around to face Plaintiff, drew his firearm, and fired multiple rounds.

28.     Mirrielees was able to contemporaneously perceive Lerma's actions and that Lerma was going to shoot Plaintiff.  Mirrielees knew that Lerma was going to shoot Plaintiff, an innocent bystander, and that Lerma would use clearly excessive force on Plaintiff.  Mirrielees has an opportunity to stop Lerma from shooting Plaintiff.  Despite this knowledge, Mirrielees acted with conscious indifference to Plaintiff's rights and allowed Lerma to fire multiple rounds at Plaintiff.

29.     Plaintiff was hit five times.  Plaintiff received multiple, serious wounds, including damage to the ligaments in his arm.  Among other injuries, Plaintiff has gone through surgeries and extensive rehab to his right hand in an attempt to get it back to a functioning state.

30.     Plaintiff reached the bottom of the stairs and realized he was shot.  Plaintiff collapsed, cried out for help, and eventually crawled out of the home to other officers waiting outside.

31.     At the scene of the shooting, there was a homicide investigation into what happened with Plaintiff.

32.     Lerma was present at the investigation with his attorney.

33.     The investigators questioned Lerma and multiple other witnesses.

34.     The investigators gathered evidence and submitted certain evidence to lab testing by an FBI certified forensic laboratory.

35.     Among other things, the investigation determined that Lerma shot Plaintiff five times.

36.     Plaintiff filed an Internal Affairs complaint regarding the incident.

37.     Harris County investigated the shooting.  The investigation took an extremely long time, longer than it should have under any reasonable circumstances.

38.     Lerma gave statements during the investigation.

39.     During the investigation, the investigator obtained multiple pieces of evidence, including objective physical evidence, that clearly showed Lerma was lying about multiple occurrences during the incident.  For example, the evidence obtained showed Lerma lied about where he discharged his weapon, lied about the fact that Plaintiff was in his line of fire, and lied about not shooting his partner Mirrielees.

40.     The investigator pointed out these inconsistencies to Lerma and asked him if he wanted to add any information to his statement.  Lerma, through his attorney, said "no."

The investigator specifically noted this in his report.  It is extremely unusual for an investigator to make such an observation in an internal affairs report regarding a police officer.  It is generally accepted that an investigator only notes such inconsistencies of a police officer when the investigator knows the officer is lying in an investigation.

41.     Sheriff Ed Gonzalez ("Gonzalez") is the elected Sheriff of Harris County and is a final policy maker for the county.  The investigation into the incident made the basis of this lawsuit resulted in discipline for Lerma.  Sheriff Gonzalez signed off on Lerma's discipline through Jesse Razo, a Major at Harris County.  Lerma's order of discipline was reviewed personally by Darryl A. Coleman, Chief and Disciplinary Review Board Chairman.  The order specifically pointed out the inconsistencies in Lerma's version of the events and how they contradicted the other evidence obtained.  It is generally accepted inconsistencies are only noted in a discipline order because the Sheriff or final decisionmaker knows the officer lied in the investigation.  Untruthfulness is the worst reason a police officer can be disciplined.  Once that finding is made against a deputy, it is considered the "kiss of death" because the deputy can no longer credibly testify in a criminal case.  In other words, the deputy's lack of credibility always supplies reasonable doubt in a court of law.  This is especially true of a deputy like Lerma, whose responsibilities would require him to testify in court.  Gonzalez either made the final decision on Lerma's discipline, or delegated both final policymaking authority and/or final decision making about Lerma's punishment to Major Jesse Razo, Darryl A. Coleman, and/or the Administrative Disciplinary Committee.

42.     As a result of the complaint, the allegations were sustained against Lerma, and not sustained against Mirrielees.  Lerma was suspended for one (1) day without pay. When it made this decision, the final policymaker was fully aware of Lerma's deception and had full knowledge of Lerma's wrongdoing, but chose to ignore it and provide no meaningful discipline.  In other words, Sheriff Gonzalez, Major Jesse Razo, Darryl A. Coleman, and/or the Administrative Disciplinary Committee (i.e., the final policymaker) ratified Lerma's conduct.  No objectively reasonable police officer would have given Lerma a one-day suspension.  Only a plainly incompetent or consciously indifferent investigator, policymaker, or officer would have concluded a one-day suspension was appropriate for Lerma.  In fact, every reasonably objective investigator, policymaker, and officer would have seen such light discipline as a dereliction of duty, and plainly insufficient under the circumstances.  They would have seen it as a coverup.  After the incident, Lerma received a glowing review from his supervisor.  Despite knowledge of the incident and Lerma's deceptions, and his prior use of force and excessive force, his supervisor failed to mention any of it and said Lerma was (effectively) an example of an ideal officer.  This was done to help cover up the incident.  Harris County and the supervisor knew this glowing review was false and would help insulate them from liability, but they signed off on the review anyway.

43.     Before Lerma was given his one-day suspension in April of 2019, the district attorney brought charges against Lerma in front of a grand jury.  Upon information and belief, the district attorney did not tell the grand jury about Lerma's inconsistent statements and the obvious evidence deception about what happened as previously stated in this petition.  Purposely omitting obvious evidence of deception is something done only by

someone who is plainly incompetent, consciously indifferent to the obvious harm it would cause, or intentionally trying to secure a "no bill" despite the plainly obvious conclusion that charges should be brought.  This omission was designed to secure a "no bill" verdict and allow Harris County to avoid liability and embarrassment.  The grand jury "no billed" Lerma in December of 2018.

44.     Lerma and Mirrielees had multiple, previous complaints of misconduct, including the use of excessive force.  Lerma also had an excessive amount of use of force incidents.  Between the time he was hired by Harris County and this incident, Lerma had twenty uses of force, including 5 uses of force with a taser.  Of those, all 5 uses of force with a taser were investigated, and one of the uses of force were investigated.  None of the other uses of force were investigated despite, upon information and belief, multiple uses of force having telltale signs of excessive force being used.  Furthermore, upon information and belief, in the previous investigations and use of force reports, Lerma made multiple attempts at deceiving the investigators by lying about what happened to cover up his wrongdoing.  Lerma's deception and tactics were plainly obvious to any investigator, but the investigators in these matters simply ignored these clear signs without regard for the consequences that would plainly follow.

45.     In one episode, in February of 2017, Lerma used a taser on a handicapped individual who used a walker.  The individual was not resisting arrest, not a threat, and in fact had turned around and put his hands behind his back so Lerma and others could arrest him.  However, Lerma tased him for 15-20 seconds anyway.  Lerma, another officer, and Harris County were sued in 2017 as a result of this incident.  During the investigation into

this incident, Deputy Lerma admitting to telling one of the residents, Ms. Dobbs, that he would shoot her dogs if she let them out. One of the dogs had been accused of damaging a neighbor's fence. Moments before saying this to Ms. Dobbs, Lerma alleged he considered her a potential victim of domestic violence. When he said this to Ms. Dobbs, she was simply retrieving a camera to videotape the incident as is her constitutional right. However, these statements conflicted with other statements Lerma made in the investigation. These conflicting statements clearly indicated deception by Lerma. It was plainly obvious during this 2017 taser incident investigation that Lerma was lying to cover up his wrongdoing. It was also plainly obvious that he was a clear and present danger to citizens and innocent bystanders because of his violent tendencies. Harris County did not discipline Lerma for this incident even though it knew of the risk he posed. Upon information and belief, this was the final investigation and/or use of force incident involving Lerma before the incident made the basis of this lawsuit.

46.    The decision not to discipline Lerma for the 2017 incident was made by Sheriff Gonzalez, a final policymaker for Harris County, Texas. Alternatively, the decision was made by a person(s) who was delegated policymaking authority and/or final decision-making ability regarding investigations by a final policymaker. In conjunction with the prior uses of force, investigations, Lerma's deceptive tactics, and his history that Harris County was aware of, this investigation made it plainly obvious that the only way to prevent a future use of excessive was to either: 1.) terminate Deputy Lerma; or 2.) reassign him to another role where the potential for the use of force or the use excessive force is practically non-existent, such as an administrative role.

47.     Lerma, Mirrielees and Harris County do not have insurance for this incident. Harris County has never required its officers to obtain insurance in case they are sued for excessive force.  Harris County has never required its officers to obtain other means to satisfy a judgment against them such as a bond, surety, or other means.  Harris County, unlike multiple other municipalities in Texas and throughout the United States, does not pay or otherwise satisfy judgments entered against is deputies for violations of civil rights, including excessive force.  It is the official policy, or unofficial custom of Harris County Sheriff's deputies to not obtain such insurance or indemnification so that the deputies remain "judgment proof" in the event of litigation.  This actively discourages litigants and attorneys from filing lawsuits because there is often no ability to recover just compensation for violations of constitutional rights such as the prohibition of excessive force.  Because deputies are not held accountable for excessive force, this creates an official policy, or unofficial custom, of normalizing the use of excessive force as the deputies know it is extremely unlikely they will be sued.  This was a moving force of the excessive force visited on Plaintiff as stated in this complaint.

48.     Lerma's highest education is a high school degree.  Harris County knew this when it hired him.  It is well known and accepted in the policing community in Texas and nationwide that departments who do not require at least an associate degree for newly hired deputies have increased rates of excessive force.  Further, it is well known and accepted in the policing community in Texas and nationwide that departments who hire deputies with an associate degree, but also hire deputies with only high school diplomas, that deputies with only high school degrees have increased rates of excessive force. In other words, it is

clear the plain and obvious effect of hiring deputies like Lerma who have only a high school degree will result in an unacceptable increase in the use of excessive force by deputies. Despite this clear knowledge, Harris County had the official policy, or unofficial custom, of requiring only a high school degree for patrol deputies like Lerma.  This was a moving force of the excessive force visited on Plaintiff as stated in this complaint.

49.     In November 2020, the Sunset Advisory Commission issued a Staff Report ("Report") regarding the Texas Commission on Law Enforcement ("TCOLE").  The Report determined Texas' approach to law enforcement has failed to meet the public's needs.  It said there is a lack of statewide standards, poor accountability, and inadequate training.  The report said that many of TCOLE's struggles are beyond its control.  The report stated that TCOLE's minimum standards were outdated and inadequate.  It also specifically pointed out that TCOLE had not authority to enforce standards for local sheriff's offices.  The report concluded the state's regulatory system is fundamentally broken.  The report is indicative of the chronic, widespread, and constitutionally deficient training and oversight for law enforcement in Texas.

50.     It is well known and accepted in the policing community in Texas and nationwide that departments in states that have widespread and chronic training and oversight deficiencies, such as those cited in the Report, have increased rates of excessive force.  Further, it is well known and accepted in the policing community in Texas and nationwide that departments who hire deputies in states that have widespread and chronic training and oversight deficiencies have increased rates of excessive force. In other words, it is clear the plain and obvious effect of using TCOLE minimum standards to any degree in

hiring, supervision, disciplinary and/or retention decisions will result in an unacceptable increase in the use of excessive force by deputies.  Despite this clear knowledge, Harris County had the official policy, or unofficial custom, of using TCOLE minimum standards for hiring, supervision, disciplinary and/or retention decisions regarding patrol deputies like Lerma and Mirrielees.  This was a moving force of the excessive force visited on Plaintiff as stated in this complaint.

51.     Because of the constitutionally deficient training and oversight, the failure to require more than a high school degree, the lack of insurance, the ineffective investigations of Defendants, and other official policies and/or unofficial customs, officers like Lerma and Mirrielees were inadequately equipped to handle situations like those presented to them at the time of the incident.   As a result, they respond with illegal, unconstitutional, and excessive force.   These official policies and/or unofficial customs, either alone or in combination, were the moving force of the excessive force visiting on Plaintiff as stated in this complaint.

52.     Sheriff Gonzalez, Major Jesse Razo, Darryl A. Coleman, the Disciplinary Review Board, the Commissioner's Court, and other final policy makers for Harris County had knowledge of the official policies and/or unofficial customs stated previously.  Despite it being plainly obvious to Harris County that continuing these policies and customs would result in an unacceptable increase in excessive force, Harris County chose not to correct, change, or alter any of these policies.  In other words, Harris County accepted the inevitable increase and problem with excessive force as "the cost of doing business."    This

widespread, lax attitude toward excessive force resulted Plaintiff's injuries as alleged in this lawsuit.

53.     Prior to filing this lawsuit, Plaintiff made open records requests for any complaints, Internal Affairs investigations, lawsuits, disciplinary actions, or similar documents regarding alleged or actual misconduct of Lerma and Mirrielees.

54.     Harris County responded to these requests by requesting guidance from the Texas Attorney General's office.  Because the number of documents regarding Lerma's and Mirrielees' misconduct was so great, Harris County told the attorney general the responsive documents were "voluminous."   As a result, Harris County submitted a "representative sample" of the documents showing Lerma's and Mirrielees' misconduct.

55.     Among other documents, Harris County submitted was a "Custodial Death Report" regarding the incident involving Plaintiff and Cobb.  The attorney general's office stated that Harris County should have produced the report because it was made public by statute.  The death report confirmed that Cobb was handcuffed during the incident, and contained contradictory information as to whether Cobb attempted to injure anyone at the scene.  Harris County's withholding of the death report was at least one example of its attempt to hide information from Plaintiff and prevent him from learning about what happened the night of the incident.

56.     Because of the acts of the Harris County Sheriff's Department, Harris County, and Officer Lerma, Plaintiff has suffered general, special and consequential damages allowed by law. Plaintiff continues to suffer from said injuries.

# V.
# CAUSES OF ACTION

## COUNT ONE

### Violation of Plaintiff's Constitutional Rights by Defendants Harris County a/k/a Harris County Sheriff's Department, Juan Lerma, and Patrick Mirrielees

57.    Plaintiff realleges and incorporates by reference paragraphs 1-56 of the Compliant as if set forth at this point in the Complaint verbatim.

58.    The actions of Defendants, Harris County a/k/a Harris County Sheriff's Department, Juan Lerma, and Patrick Mirrielees, and their creation and establishment of the policies, customs, or procedures of the Harris County Sheriff's Department violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.  Specifically, this conduct violated his rights:  (1) to be free from unreasonable search and/or seizure of his person under the Fourth Amendment to the Constitution of the United States; and (2) to be free from the use of unreasonable, unnecessary, and excessive force under the Fourth and Fourteenth Amendments to the Constitution of the United States.

59.    The policy makers for Harris County a/k/a Harris County Sheriff's Department, Juan Lerma, and Patrick Mirrielees, under color of law, intentionally, negligently, and with complete and deliberate indifference, caused Plaintiff to be deprived of his constitutional, statutory, and common law rights under Texas law and the Federal Constitution.  Plaintiff has a constitutionally recognized liberty interest to be free from excessive force and violence by anyone with state authority.

60.     Harris County a/k/a Harris County Sheriff's Department, authorized, approved, permitted, ratified, and tolerated the unlawful deliberate, malicious, reckless and wanton conduct of Defendants Juan Lerma and Patrick Mirrielees thus depriving Plaintiff of his constitutional rights.  Harris County Sheriff's Department, Harris County and/or its final policymaker (or person who was delegated final policymaking authority and/or final decision making authority) authorized, approved, permitted, ratified, and tolerated the custom and practice of the unconstitutional acts committed by Defendant Juan Lerma and Patrick Mirrielees.  With full knowledge of the deception, and wrongful and unconstitutional acts of Juan Lerma and Patrick Mirrielees, Harris County a/k/a Harris County Sheriff's Department ratified their conduct or, in the alternative, failed to take appropriate corrective action because of its conscious indifference to their actions. In sum, the investigation regarding the incident made the basis of this lawsuit was a cover-up.

61.     Defendants Juan Lerma and Patrick Mirrielees used authority conferred on him by the Harris County Sheriff's Department and Harris County to commit the offenses enumerated above.  Defendants Juan Lerma and Patrick Mirrielees and the Harris County Sheriff's Department and Harris County deliberate indifference violated Plaintiff's constitutional rights to bodily integrity.  The Texas Harris County Sheriff's Department and Harris County were aware of misconduct of Defendant Defendants Juan Lerma and Patrick Mirrielees in the past, and acted with deliberate indifference toward Plaintiff's constitutional rights.  Thus, the Harris County Sheriff's Department and Harris County are liable under § 1983 of the U. S. Code.  The Harris County Sheriff's Department and

Harris County's failure to take action that was obviously necessary to prevent or stop the unlawful, excessive, and unconstitutional conduct of Harris County Sheriff's Department and Harris County caused unconstitutional injuries to Plaintiff, and constitute official policy decisions for which Harris County Sheriff's Department and Harris County are liable.

62.     Without waiving the foregoing, Plaintiff says Defendant Harris County violated Plaintiff's Constitutional rights by the following specific conduct; acts or omissions; and/or policies, customs and practices:

(1) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using investigations as a rubber stamp to justify, authorize or approve of excessive force by its deputies. Plaintiff says that Defendants were the final policy making officials and were aware of Defendant Juan Lerma and Patrick Mirrielees, and other officers' deceptions and the obviously defective investigations and either approved such conduct or failed to take corrective action. Because of such failure or lack of corrective action Plaintiff was a victim of excessive force.

(2) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using investigations of Defendant Juan Lerma as a rubber stamp to justify, authorize or approve of excessive force by Lerma. Plaintiff says that Defendants were the final policy making officials and were aware of Defendant Juan Lerma deceptions, and other officers' obviously defective investigations and either approved such conduct or failed to take corrective action. Because of such failure or lack of corrective action Plaintiff was a victim of excessive force.

(3) Defendants authorized, approved, permitted, ratified, and tolerated the custom and practice of officers failing to remove innocent bystanders from a scene before they attempted apprehend someone who is considered armed and dangerous, or otherwise a danger to others. Plaintiff says that Defendants were the final policy making officials and were aware of Defendant Juan Lerma and Patrick Mirrielees, and other officers' propensity to leave innocent bystanders in dangerous situations and either

17

approved such conduct or failed to take corrective action.  Because of such failure or lack of corrective action, Plaintiff was a victim of excessive force.

(4) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using TCOLE minimum standards for hiring, supervision, disciplinary and/or retention decisions regarding patrol deputies like Lerma and Mirrielees.  Plaintiff says that Defendants were the final policy making officials and were aware of the use of TCOLE minimum standards, and either approved such conduct or failed to take corrective action.  Because of such failure or lack of corrective action Plaintiff was a victim of excessive force.

(5) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of widespread lack of standards, inadequate training, and poor accountability regarding patrol deputies like Lerma and Mirrielees.  Plaintiff says that Defendants were the final policy making officials and were aware of widespread lack of standards, inadequate training, and poor accountability regarding patrol deputies like Lerma and Mirrielees, and either approved such conduct or failed to take corrective action.  Because of such failure or lack of corrective action Plaintiff was a victim of excessive force.

(6)  Defendant Lerma's history and use of force history, prior investigations, prior deceptions, was known to Harris County.  That, combined with the extreme facts of this case, and the use of a rubber stamp investigation to cover up Lerma and Harris County's liability, fall under the "single incident exception" to *Monell* policy or custom liability.

(7) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom or practice of hiring deputies such as Lerma while only requiring a high school degree.  Plaintiff says that Defendants were the final policy making officials and were aware of the fact that Defendant Juan Lerma and Patrick Mirrielees, and other officers' only had high school degrees, and there was a propensity for such officers to use excessive force.  Because of such failure or lack of corrective action, Plaintiff was a victim of excessive force.

(8) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom or practice of not requiring deputies to get insurance to cover excessive force claims and/or actively discouraging deputies from getting such insurance.  Plaintiff says that Defendants were the final policy making officials and were aware of the fact that Defendant Juan Lerma and Patrick Mirrielees, and other

officers' did not have such insurance, and there was a propensity for such officers to use excessive force. Because of such failure or lack of corrective action, Plaintiff was a victim of excessive force.

(9) Defendants failed to adequately supervise Defendant Juan Lerma and Patrick Mirrielees. Plaintiff says Defendants were aware of Defendant Juan Lerma's and Patrick Mirrielees' propensities for Constitutional violations and failed to ensure that they had supervision sufficient to prevent the unlawful conduct. Because Defendants Juan Lerma and Patrick Mirrielees did not have adequate supervision, they were able to make an unwarranted attack on Plaintiff. Defendants acted or failed to act with malice and/or deliberate indifference and with awareness of the substantial risk of harm their conduct posed. This conduct caused Plaintiff to suffer Constitutional deprivations and injuries.

(10) Defendants failed to perform an adequate training, or with deliberate indifference ignored the training results, of Defendant Juan Lerma and Patrick Mirrielees to determine their propensity for violating civil rights prior to employing them as Peace Officers; and, or alternatively, failed to terminate their employment as Peace Officers after learning of his propensity for violating civil rights. Plaintiff says that Defendants Juan Lerma and Patrick Mirrielees demonstrated characteristics from which Defendants should have known of their propensity for violating civil rights prior to their employment as a Peace Officer by Defendants. Alternatively, Plaintiff says that Defendants Juan Lerma and Patrick Mirrielees demonstrated their propensity for violating civil rights during their tenure at the Harris County Sheriff's Department, for which their employment should have been terminated. Defendants are the final decision makers for Harris County Sheriff's Department and are vested with the authority to hire and terminate employees. Because Defendants employed or retained Defendants Juan Lerma and Patrick Mirrielees when they knew or should have know of their propensity to violate civil rights, Defendants placed Juan Lerma and Patrick Mirrielees in a position where they could violate Mr. Coucke's rights.

(11) Defendants failed to perform an adequate screening, or with deliberate indifference ignored the screening results, of Defendant Juan Lerma and Patrick Mirrielees to determine their propensity for violating civil rights prior to employing them as a Peace Officer; and, or alternatively, failed to terminate their employment as a Peace Officer after learning of his propensity for violating civil rights. Plaintiff says that Defendant Juan Lerma and Patrick Mirrielees demonstrated characteristics from which Defendants should have known of their propensity for violating

civil rights prior to their employment as a Peace Officer by Defendants. Alternatively, Plaintiff says that Defendant demonstrated their propensity for violating civil rights during their tenure at the Harris County Sheriff's Department, for which his employment should have been terminated. Defendants are the final decision makers for Harris County Sheriff's Department and Harris County and are vested with the authority to hire and terminate employees.  Because Defendants employed or retained Defendant Juan Lerma and Patrick Mirrielees when they knew or should have known of their propensity to violate civil rights, Defendants placed Officer Defendant Juan Lerma and Patrick Mirrielees in a position where they could violate Plaintiff's rights.

These acts or omissions, taken individually or collectively, violated Plaintiff's rights guaranteed by the United States Constitution.  These rights are clearly established by the United States Constitution, The Texas State Constitution, law enforcement training, the policies and procedures of the Harris County Sheriff's Department, and Harris County, and by the Texas Code of Criminal Procedure; therefore, Defendants Harris County Sheriff's Department and Harris County are not entitled to official immunity.  Each of these official policies, or unofficial customs, were singularly the moving force of the violations of Plaintiff's constitutional rights.  Alternatively, all or part of these official policies, or unofficial customs, combined to become the moving force of the violations of Plaintiff's constitutional rights.  These specific acts violating Plaintiff's constitutional rights were the cause or proximate cause of Plaintiff's injuries.

## COUNT TWO

### Plaintiff's claims under the Texas Tort Claims Act for Defendants Harris County, Texas a/k/a Harris County Sheriff's Department

63.    Plaintiff restates the allegations contained in paragraphs 1 through 60 above. Defendants had a duty of care to Plaintiff.  Defendants' conduct fell below the

standard of care, and the breach of that standard caused Plaintiff's damages. Furthermore, Defendants were aware of the extreme degree of risk to Plaintiff health, safety and welfare posed by the actions there were about to commit. Despite this actual awareness, Defendants proceeded with conscious indifference to that risk. Defendants acted intentionally, and with malice. Defendants' actions and omissions, negligence, gross negligence, and conscious indifference of Defendants as recited above are also violative of the Texas Tort Claims Act, as set out in Chapter 101 *et seq* of the Texas Civil Practice and Remedies Code. Pursuant to Tex. Civ. Prac. and Rem. Code § 101.25, these governmental entities have waived sovereign immunity and are liable for the damages of Plaintiff for the multiple gunshot wounds he received.

## VI.
## PROXIMATE CAUSE

64.     Each and every of the foregoing acts and/or omissions, on the part of Defendants, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages set forth below.

## VII.
## DAMAGES

65.     The damages, which are unliquidated, are within the jurisdictional limits of this Court.

66.     As a proximate result of Defendants' conduct, Plaintiffs suffered injuries. As a result, Plaintiffs have suffered the following damages:

    a.     Pecuniary loss and out of pocket expenses in the past and future;

    b.     Damage to property, including replacement costs;

c.      Medical expenses in the past and future

d.      Physical impairment in the past and future;

e.      Physical impairment in the past and future;

f.      Lost wages in the past and future;

g.      Loss of earning capacity in the past and future;

h.      Mental anguish and pain and suffering in the past and future;

i.      Life care expenses in the past and future;

j.      Exemplary damages;

k.      Constitutional damages; and

l.      Attorney's fees through trial and appeal.

67.    The damages sustained by Plaintiffs as set forth above were the direct and proximate result of the acts or omissions of Defendants.

68.    Plaintiffs believe that the jury has the sole right and responsibility to assess damages in an amount that it finds is appropriate given the facts and circumstances of this case.

## ATTORNEY'S FEES

69.    Plaintiff says that they have retained the undersigned attorneys to prosecute this action and that Plaintiff hereby seeks the recovery of all reasonable attorney's fees incurred in the prosecution of this matter as provided 42 U.S.C. § 1988, and as provided under applicable law.

## EXEMPLARY DAMAGES

70.     Plaintiff seeks the recovery of exemplary damages in an amount sufficient to deter wrongful conduct of this sort as determined by the trier of fact.  Because of the current state of the law, Plaintiff does not seek exemplary damages against Harris County, Texas a/k/a Harris County Sheriff's Department.

## VIII.
## DEMAND FOR JURY

71.     Plaintiff demands a jury trial and tenders the appropriate fee.

## IX.
## ALLEGATIONS IN THE ALTERNATIVE

72.     Pursuant to Federal Rule of Civil Procedure 8 (d), all allegations are in the alternative.

## X.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Joshua Coucke prays that Defendants HARRIS COUNTY, TEXAS a/k/a HARRIS COUNTY SHERIFF'S DEPARTMENT, JUAN LERMA and PATRICK MIRRIELEES be cited in terms of law to appear and answer herein, and that upon final hearing herein, that Plaintiff have and recover judgment of and from the Defendants, jointly and severally, for all of its damages as hereinabove set forth, plus reasonable attorney's fees, costs of court, punitive damages in an amount determined by the trier of fact, pre-judgment interest and post-judgment interest at the maximum rates permitted by law, and for such other and further relief, both general and special, at law or in equity, to which your Plaintiff may be justly entitled.

Respectfully submitted,

ANDREW E. LEMANSKI & ASSOCS.

/s/ Andrew E. Lemanski
_____
ANDREW E. LEMANSKI
State Bar No: 24046288
9600 Long Point, Suite 150
Houston, Texas 77055
Telephone:  713-515-2826
Fax:  713-583-9401
Email:  andylemanski@yahoo.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document will be served on all counsel of record per the District Court CM/ECF system on January 11, 2021.

/s/ Andrew E. Lemanski
_____
Andrew E. Lemanski